Monark Metal & Supply Company, Respondent, vs. Schmidt, Trustee, and another, Appellants.

*February 8—March 6, 1928.*

*Banks: Agreement to honor drafts drawn against goods shipped: Contracts of guaranty of performance: Liability: Where consignee refuses shipment: Recovery on contract to pay drafts: Trial: Harmless error in court cases.*

1. Under sub. (1) (f), sec. 221.04, Stats., a bank may make an agreement to pay drafts drawn against a consignee if accompanied by invoice and bill of lading for the goods shipped; but before the drawer may proceed against the bank he must perform on his part, that is, make the shipments and present the required documents.   p. 302.

2. Such an agreement is a direct contract to purchase a negotiable security with collateral attached.   Although in form complying with the statute of frauds, it is not a guaranty of performance of the purchaser's contract—a contract which the bank has no authority to make.   pp. 302, 303.

3. The seller, not shipping metal to a buyer after the latter had notified it that it would refuse further shipments, and not presenting the drafts to the bank with bills of lading and invoices attached, could not maintain an action against the bank for a breach of contract to pay drafts accompanied by a bill of lading.  p. 303.
4. The admission of improper evidence regarding the price of metal is *held* not prejudicial error where the trial was before the court.  p. 304.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES WICKHAM, Judge.  *Affirmed in part; reversed in part.*

The plaintiff, a St. Louis, Missouri, corporation, complained against the defendants on breach of contract.  The contract was in writing, between the plaintiff and the defendant Metal Company, whereby the plaintiff agreed to sell, and the defendant Metal Company agreed to buy, three carloads of metal.  The defendant Metal Company, a Wisconsin corporation, accepted and paid for one car, and refused to accept the other two.  The predecessor of the defendant bank, a Wisconsin state bank, is claimed to have assumed direct liability for payment of the shipments, and that it also refused to accept shipment of the two cars.  The liability of the bank is predicated on correspondence in writing between its predecessor and the plaintiff.

The trial court made its findings of fact, a jury having been waived, wherein it found both defendants, jointly and severally, breached their contract with plaintiff and were liable for the damages flowing from such breach of contract.

The defendant Metal Company became insolvent pending the proceedings, and the defendant *Schmidt* was appointed trustee in bankruptcy and made a party defendant.  The defendant bank, by reorganization, became the successor of the American Exchange Bank, and admits it assumed any liability of said American Exchange Bank under its contract with plaintiff.

The contract and correspondence, so far as necessary to a complete understanding of the actual agreements, follows:

### Exhibit No. 1.

#### "Contract.

"The Monark Metal & Supply Company, St. Louis, Missouri, hereby agree to sell and the General Metal & Refining Company, Milwaukee, Wis., agree to buy forty tons of Clean Light & Medium Brass at $7.75 per cwt. and twenty-five tons Heavy Yellow Brass and Tubing at $8.37½ per cwt., f. o. b. cars, Milwaukee, Wis., for shipment during the next sixty days.

"Terms:   90 % draft against order bill of lading, with invoice attached, after freight is deducted.

"They agree to remit the balance within ten days after receipt of material.

"This agreement is subject to our writing Mr. C. D. Raney, Vice-President American Exchange Bank of Milwaukee, that the drafts presented at their bank will be paid by them upon presentation of documents and invoice attached thereto—drafts to be paid five days sight.

"Monark Metal & Supply Co.

"(Signed) M. Oleon, Treasurer.

"Accepted:

"General Metal & Refining Co.,

"By (signed) S. Sadek, Sec'y."

### Exhibit No. 2.

"Monark Metal & Supply Co.

"Saint Louis, Mo.

"Mr. C. D. Raney,                              June 13, 1923.

"Vice-Pres. American Exchange Bank,

"Milwaukee, Wis.

"Dear sir:   Mr. S. Sadek of the General Metal & Refining Company, your city, is seeking a source of supply of raw materials from this section, and we have sold him today approximately sixty-five tons metals, in the neighborhood of $10,000, for shipment during the next sixty days.

"This tonnage will be loaded in three cars and each car will amount to approximately $3,500.

"The terms of this sale are—90 % draft with order, bill

of lading and invoice attached, after freight is deducted, balance to be remitted within ten days after receipt of material.

"Mr. Sadek intimated that your bank would guarantee the payments of these drafts within five. days after same are presented at your bank for collection.

"If you will be good enough to write us your willingness to that fact, will proceed to make shipment of the first car.

"Your reply by return mail will be greatly appreciated by

"Yours very truly,
"MONARK METAL & SUPPLY CO."

*Exhibit No. 3.*

"American Exchange Bank,
Milwaukee, Wis.

"The Monark Metal & Supply Co., ⁻ June 16, 1923.
"5121 N. Second St.,
"St. Louis, Mo.

"Gentlemen: We have your letter of June 13th in regard to the proposed arrangements of Mr. S. Sadek of the General Metal & Refining Company.

"The bank has made arrangements with Mr. Sadek to finance this shipment one car at a time.

"Trusting this information will prove satisfactory, we are,

"Yours very truly,
"(Signed) C. D. RANEY, Vice-President."

*Exhibit 6.*

"American Exchange Bank, June 18, 1923.
"Milwaukee, Wis.

"Gentlemen: ' Attention Mr. C. D. Raney.

"We have your valued favor of the 17th and take it for granted that you will honor our drafts for 90 % amount of invoice with order bill of lading attached for each car of metal we will ship to the General Metal & Refining Company, of your city, in accordance with arrangements made with Mr. S. Sadek on the 13th inst. Thanking you very kindly, we remain,

"Yours very truly,
"MONARK · METAL & SUPPLY CO.
"M. Oleon, Treasurer."

*Exhibit 8.*

"General Metal & Refining Co.,      June 29, 1923.
        "Milwaukee, Wis.              Rec'd June 30, 1923.
    "Gentlemen: We enclose herewith copy of invoice, copy of order bill of lading and carbon copy of tally sheet covering car P.R.R. 36588.

"We have deposited original invoice with original order bill of lading attached to draft for $2,673.20, payable five days from sight, to the American Exchange Bank. You will note that the freight is prepaid, and the tally sheet shows every package loaded in the car, numbered with the gross, tare and net weight, therefore, please be careful when unloading the car as we have just installed a new electro-automatic scale, and if you should happen to find a package short, please lay it aside and advise us.

"Please take care of draft promptly, and oblige,
                              "Yours truly,
                    "MONARK METAL & SUPPLY Co.
                    "M. Oleon, Treasurer."

*Exhibit 13.*

"Monark Metal & Supply Co.,        August 3, 1923.
    "5121-5145 North Second St.
        "St. Louis, Mo.
    "Gentlemen: Inasmuch as your last shipment contained considerable Manganese and other foreign material that we were unable to use, our bank will not honor any more drafts on the basis of 90%. Under the circumstances you will have to cancel the balance of material on order.
                          "Very truly yours,
                    "GENERAL METAL & REFINING Co.
                    "S. Sadek."

*Exhibit 4*

"American Exchange Bank,            Aug. 9, 1923.
    "Milwaukee, Wisc.
"Gentlemen:        Attention Mr. C. D. Raney.
    "We are in receipt of letter from the General Metal & Refining Company, your city, copy of which we are herewith inclosing.

"Please advise us, by return mail, whether you will honor our drafts with bills of lading attached for 90% amount of invoice in accordance with your letter to that effect.

"Inasmuch as the market is declining daily and to protect everybody's interest, we would request that you advise us not later than Monday whether we shall proceed to make shipment.        Yours truly,

"MONARK METAL & SUPPLY Co.

"M. Oleon, Treasurer.

"cc to General Metal & Refining Co.

"Milwaukee, Wis."

*Exhibit 5.*

"Monark Metal & Supply Co.,        August 11, 1923.

"5121-45 North Second St.,

"St. Louis, Missouri.

"Gentlemen: We beg to advise that the arrangements made between the bank and Mr. Sadek for protecting drafts against the General Metal & Refining Company as described in our letter of June 16th, have now been canceled. You cannot, accordingly, count on any protection from us on drafts against this company.

"Yours very truly,

"C. D. RANEY, Vice-President."

*Exhibit 16.*

"General Metal & Refining Co.,        Aug. 13, 1923.

"Milwaukee, Wisc.

"Gentlemen: We are in receipt of a letter from the American Exchange Bank, Milwaukee, advising that the arrangements made between the bank and your company by which they agreed to protect our drafts against you in accordance with the bank's letter of June 16th, for the sum of 90 % of our invoices drawn against bills of lading, have been canceled, and that because of such cancellation they will no longer protect our drafts drawn against your company.

"We shall proceed to ascertain the amount of our loss and will look to you for reimbursements.

"Yours very truly,

"MONARK METAL & SUPPLY Co.

"M. G. Baron, President."

*Reginald I. Kenney* of Milwaukee, for the appellant trustee, *A. C. Schmidt.*

For the appellant *American National Bank* there was a

brief by *Edgar L. Wood,* attorney, and oral argument by *John C. Warner,* both of Milwaukee.

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *F. C. John,* of counsel, all of Milwaukee, and oral argument by *Mr. John.*

CROWNHART, J.   To get the intent of the parties it is necessary to analyze the documents, assuming the position and condition of the parties at the time.   There seems to be no dispute over the meaning of the contract between the two metal companies.   It is plainly worded.   The contract was not to be effective until the plaintiff should write the American Exchange Bank, and it should agree "that the drafts presented at their bank will be paid by them upon presentation of documents and invoice attached thereto,— drafts to be paid five days sight."   The plaintiff thereupon wrote the bank, not as provided in the contract, but, after explaining the general terms of the contract, presented its proposition to the bank as follows:

"Mr. Sadek intimated your bank would guarantee the payment of these drafts within five days after the same are presented at your bank for collection."

There is no mention here that the bank should take upon itself the direct obligation of payment.   It was to guarantee collection of the drafts.   To this proposition of plaintiff the bank replied that it had "made arrangements with Mr. Sadek to finance this shipment one car at a time."   No promise here to pay—at best it can only be said to be an acceptance of the plaintiff's proposition to guarantee collection of drafts on shipments one car at a time.

Then follows the plaintiff's response, where, for the first time, it is suggested that the bank "will honor our drafts ninety per cent. amount of invoice with order bill of lading attached for each car of metal."   To this there was no response by the bank, and it is fair to assume that the bank

accepted plaintiff's interpretation of the agreement,—silence gave consent.

So we have the final meeting of the minds of the bank and the plaintiff on this contract. The bank having made arrangements with the defendant Metal Company to finance its contract to purchase metal from the plaintiff, it thereupon entered into an agreement with the plaintiff to honor its drafts for metal shipped to defendant Metal Company pursuant to its contract with such company, such drafts to have bill of lading attached and to be for ninety per cent. of the invoice price, and drafts to be paid five days after sight. There can be no reasonable doubt about this being the final understanding of the parties.

Pursuant to the contracts here set forth, plaintiff shipped one car of metal, drew its draft on defendant Metal Company for ninety per cent. of the invoice price, presented it to the bank with invoice and bill of lading attached, and the bank collected the draft and remitted to the plaintiff.

The plaintiff and defendant Metal Company had some trouble over the quality of the metal and the balance due on the shipment, which difference was fully adjusted. Then at this point the defendant Metal Company refused to accept shipment of the other two cars, and notified plaintiff accordingly. Here, it is contended, was a plain breach of defendant Metal Company's contract with plaintiff, for which such defendant was liable to respond in damages. The plaintiff then made inquiry of the bank whether it would honor drafts as agreed, to which the bank replied that its arrangements with defendant Metal Company had been canceled and "you cannot, accordingly, count on any protection from us on drafts against this company." This was a plain, understandable refusal on the part of the bank to accept any further drafts on the defendant Metal Company. What was the bank's liability, if any, by reason of such refusal?

Let us see what was the nature of the contract. The plaint-

iff claims that the contract was one of direct liability of the bank to the plaintiff. If so, it was only for ninety per cent. of the invoice of the shipment, not for the whole shipment, as the court found. The bank claims its liability, if any, was only that of a guarantor, and that such an agreement was void under the statute of frauds, sec. 241.02, Stats., on the ground that the contract does not express any consideration. We think the contract sufficiently expresses the consideration. *Alltone Co. v. Cebell,* 194 Wis. 591, 217 N. W. 302. But the bank did not agree to guarantee the performance of defendant Metal Company's contract.

The plaintiff, before accepting the contract with defendant Metal Company, had the right to first ascertain if "the drafts presented at their bank will be paid," and the bank clearly intended to convey to the plaintiff the understanding that the drafts would be paid by the bank, upon condition that they were accompanied by invoice and bill of lading, f. o. b. Milwaukee. In other words, the bank was to have the security of the bills of lading before it paid the drafts. This was an agreement it could make within the field of its proper functions. Sub. (1) (f), sec. 221.04, Stats. But the bank did not agree to guarantee the contract of the defendant Metal Company. It had no authority to do so. *American Exp. Co. v. Citizens State Bank,* 181 Wis. 172, 194 N. W. 427. It agreed to accept the drafts when accompanied by invoice and bill of lading, and then only to the extent of ninety per cent. of the invoice, and for one car at a time. To hold the bank on its agreement, it was necessary for the plaintiff to comply with the terms of the agreement on its part. If it had done so, it may be presumed that under the arrangements the bank had made to finance the defendant Metal Company, it would have been amply protected. On the other hand, the bank could not enforce the terms of the contract between the principals. When the defendant Metal Company canceled its contract, the bank

was under no duty to compel performance. It could stand on the terms of its special contract, and under that contract there never has been a compliance on the part of the plaintiff to entitle it to damages against the bank. Before plaintiff could hold the bank liable it had to ship the metal and present to the bank the drafts therefor,—ninety per cent. of the invoice with bill of lading attached. Then, and not until then, could plaintiff recover against the bank.

But it is claimed that the bank, by its refusal to honor any further drafts, waived the necessity of the plaintiff complying fully with the terms of the contract. That is true, and the bank is not complaining that plaintiff failed to comply with the terms of its contract. It has waived any benefits it would have received if the plaintiff had complied with its contract, but that does not fix any liability against the bank. Before the plaintiff can say the bank is liable to it, it must comply with its contract, because it relies on the contract to fix the measure of damages. It may be repeated that the bank did not in any way guarantee the performance of the defendant Metal Company's contract. Its contract with plaintiff was a separate, specific contract, which was dependent upon its express terms and not upon the terms of the major contract between the metal companies.

As we have interpreted the bank's agreement, it was not a contract of guaranty but a direct contract to purchase a negotiable security with collateral attached. If the plaintiff had presented the security to the bank in accordance with its contract, and the bank had refused to accept and pay for the same, it would have had its remedy. Not having complied with its contract, it cannot maintain an action against the bank for breach of contract.

The finding of the court that the defendant Metal Company breached its contract is supported by the evidence. The trustee defendant claims that the proof does not sustain the damages found by the court. We have examined

the evidence and we think it is sufficient to sustain the judgment against the trustee. It is true that the court admitted improper evidence as to the price of metal in St. Louis, but it also had evidence of prices in Milwaukee. As the trial was before the court there was no prejudice.

*By the Court.*—The judgment of the circuit court against the *American National Bank* is reversed, with directions to dismiss the complaint as to said defendant. The judgment against the trustee is sustained. That part of the judgment decreeing a lien on the assets of the bankrupt in the possession of the bank, in favor of the bank, is set aside.